# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-57 |
| | ) | Judge Nora Barry Fischer |
| KEENA J. STANTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the Court is a motion to suppress evidence filed by Defendant Keena J. Stanton ("Defendant") on February 21, 2012.[1] (Docket No. 54). Defendant seeks to suppress: (1) a Mossberg .20 gauge shotgun wrapped in clothing that was thrown from a vehicle he was driving on July 31, 2010 during a vehicle pursuit with Pittsburgh police; (2) statements he made while being taken into custody following that same vehicle pursuit; and (3) a quantity of crack cocaine and drug paraphernalia recovered during a search of a residence at 310 Broadway Avenue, Pitcairn, where Defendant was present on September 9, 2010. *Id.* Defendant generally complains that such evidence was collected illegally or improperly and should therefore be ruled inadmissible. *Id.* The Government opposes Defendant's motion, arguing initially that he lacks standing to make these evidentiary objections, and alternatively, that the Government will present sufficient facts to justify its collection of the challenged evidence at a suppression hearing. (Docket No. 61).

Upon consideration of the parties' submissions and the transcript of the hearing, (Docket No. 77), the Court rules that Defendant lacks standing to challenge the admission into evidence of the shotgun from the incident on July 31, 2010. Because he has demonstrated standing to

---

[1] The Court is aware that Defendant has also filed two additional pretrial motions, i.e., his Motion for Disclosure of Rule 404(b) and 609 Evidence, (Docket No. 30), and Motion to Sever Counts 1 and 2 for Separate Trial, (Docket No. 55). The Court will issue separate orders setting forth the disposition of these motions.

1

challenge the use of his statements concerning his gang affiliation into evidence and the evidence gathered during the September 9, 2010 search of the residence, however, a suppression hearing will be ordered.

I. BACKGROUND

On January 31, 2012, a grand jury returned a five count superseding indictment against Defendant. (Docket No. 37). Therein, Defendant is charged with two counts of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). *Id.* at 2-3. At Count Three he is charged with Maintaining a Drug Involved Premises, in violation of 21 U.S.C. § 856(a)(1). *Id*. at 4. Count Four charges Defendant with Possession with Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). *Id*. at 5. In Count Five, he is charged with Possession of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Defendant was arraigned on February 7, 2012 at which time he pled not guilty. (Docket No. 42).

On June 7, 2012, Defendant filed this Motion to Suppress the evidence gathered on July 31, 2010 and September 9, 2010.[2] (Docket No. 54). Specifically, Defendant claims that on July 31, 2010, he was pursued by plain-clothed police officers in an unmarked police vehicle while he was driving a white Buick Regal in the Homewood section of Pittsburgh. *Id.* at 2. The officers were patrolling the area due to violent shootings in the area. *Id.* During the pursuit, officers observed a large weapon being thrown from the passenger side of the Buick Regal. *Id.* After Defendant's vehicle was stopped, another officer retrieved a .20 gauge shotgun wrapped in a pair of jeans. *Id.* While being taken into custody, Defendant allegedly shouted that he was a Crip and that "this ain't nothing." *Id.* At that time, the police had not given him any warnings regarding his constitutional rights, nor did he waive those rights prior to interrogation. *Id.* at 3.

---

[2] The police reports filed with the Court shed additional light on the facts of this case.

As to the September 9, 2010 search, Defendant alleges that officers with the Allegheny County Sheriff's Department, Pitcairn Police Department, and Allegheny County Adult Probation Office attempted to serve a bench warrant on him by conducting a warrantless entry into a residence at 310 Broadway Avenue, Apartment 3 in Pitcairn. *Id.* He avers that this address was not listed with probation as his address. *Id.* at 4.

After entering the premises but prior to locating Defendant, officers saw a digital scale and a knotted plastic bag containing crack cocaine in the living room. *Id.* at 3. Defendant was then found in the bedroom and his person was searched. *Id.* An officer conducting the pat-down felt a lump in Defendant's pocket, and after searching the pocket, a knotted plastic bag containing crack cocaine fell out. *Id.* Another unknown person in the residence later gave police consent to search the premises. *Id.* Two pistols were subsequently recovered. *Id.*

The motion also references a police report for at least one of these incidents. *Id.* A number of police reports have already been filed with the Court, *see* Docket No. 34-1, and the facts contained in the reports both parallel Defendant's allegations and shed light on the underlying incidents. These reports confirm that on July 31, 2010, Defendant was involved in a vehicle pursuit, which was initiated after Pittsburgh Police observed Defendant failing to stop at a stop sign. *Id.* at 1. Although the officers activated their lights and quickly pulled the vehicle over, Defendant pulled away when the officers approached his car on foot. *Id.* at 2. Eventually, Defendant pulled over and was ordered to lay on the ground. *Id.* As he was being placed into a police transport vehicle, the reports confirm that Defendant shouted "I'm a Crip! This ain't nothing! I'm a Crip!" *Id.* The reports do not mention whether he was advised of his constitutional rights prior to making such statements, nor do the reports provide any additional contextual facts relating to the reason why those statements were made. With respect to the

September 9, 2010 search, the police reports confirm all the facts Defendant provided in his motion. (Docket No. 34-3).

A hearing regarding Defendant's standing to bring his motion to suppress was attempted on July 13, 2012. (Docket No. 69). Because Defendant's witness was unavailable to testify that day, a continuance was granted upon his attorney's oral motion. (Docket No. 70). At the second hearing on August 15, 2012, Defendant's attorney again reported that she was unable to secure her witness's presence at the proceeding and told the Court that there were no other witnesses who would testify with respect to the standing issue. (Docket Nos. 73, 77). In light of the fact that Defendant produced no witnesses for the hearing, the Government declined to call witnesses or provide further argument. (Docket No. 77, at 5). Following the hearing, the Court ordered the transcript and closed the evidentiary record as to the Government's challenge to Defendant's standing to bring the motion to suppress. (Docket No. 74). That issue is now ripe.

## II. DISCUSSION

Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure permits a defendant to file a motion to suppress evidence before trial, but an evidentiary hearing on such a motion is not compulsory. *See* FED. R. CRIM. P. 12(c) (stating "The court ... may also schedule a motion hearing") (emphasis added). To require a suppression hearing, "a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). In addition, the suppression motion must be "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Hines*, 628 F.3d at 105 (citing *Voigt*, 89 F.3d at 1067;

*United States v. Brink*, 39 F.3d 419, 424 (2d Cir. 1994)). The burden of proof is initially on the defendant who seeks to suppress the evidence. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). After the defendant establishes a basis for his or her motion, the burden shifts to the Government. *Id.*

**A. Standing as to the firearm recovered following the vehicle pursuit.**

Defendant seeks to suppress the shotgun thrown out of a vehicle he was driving during the police pursuit on July 31, 2010. (Docket No. 54). Initially, he argues that firearm was illegally obtained because the police had no probable cause or reasonable suspicion to pursue or stop the vehicle he was driving. *Id.* at 2. Because his abandonment of the weapon was a direct result of an allegedly illegal pursuit, he claims that its seizure and admission as evidence would be in violation of his constitutional rights. *Id.* During the hearing, Defendant's counsel clarified that her argument was not premised on the violation of any possible possessory or privacy interest that Defendant might have had in the car when the firearm was seized. (Docket No. 77, at 7). Rather, Defendant appears to advance the proposition that where officers illegally approach a defendant, any contraband that is shed by the defendant during an ensuing pursuit is inadmissible as fruit from a poisonous tree.[3] *Id.*

In response, the Government contends that Defendant lacks standing to bring this suppression motion. (Docket. No. 61). The Government first argues that the pursuit of a vehicle

---

[3] At the hearing, Defendant's counsel explained her argument to the Court:

> I am not alleging that Mr. Stanton, because he had a possessory or privacy interest in the vehicle, that that was violated by the officers whenever the gun was eventually, seized. This is akin to a case, Your Honor, where a defendant is walking down the street, is approached by the officers, and takes off running, and abandons the property.
>
> The issue then is whether the initial approach by the officers was legal and whether, as a result of that, as we alleged, illegally approach, the gun was abandoned.

(Docket No. 77, at 7-8).

that fails to stop at a stop sign is lawful, and in any event, the loaded gun was tossed prior to the seizure of the Defendant. *Id.* at 3. Specifically, because the Defendant threw the loaded gun out the window prior to submitting to the officers' authority, he had not yet been "seized" within the meaning of the Fourth Amendment. *Id.* Second, because the Defendant admits that the gun was thrown during the pursuit, the Defendant thereby abandoned it, and the defense: (1) did not sustain its initial burden to allege standing; (2) cannot fulfill its burden to allege standing; and (3) cannot fulfill its burden to prove a cognizable expectation of privacy in the gun he abandoned. *Id.*

The Fourth Amendment provides for the right to be free from "unreasonable searches and seizures." U.S. CONST. AMEND. IV. A seizure occurs when a police officer uses physical force to restrain a suspect or when a suspect submits to an assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *accord United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000) ("for there to be a seizure, the police must apply physical force to the person being seized, or where force is absent, have the person seized submit to a show of police authority"). Such a submission to authority occurs when the suspect "manifests compliance with police orders." *United States v. Waterman*, 569 F.3d 144, 146 n.3 (3d Cir. 2009) (citing *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006)). In the context of a vehicular pursuit, a seizure does not occur either when police sirens are activated, or during pursuit of the suspect's vehicle. *See United States v. Sinkler*, 91 F. App'x 226, 228, 230-31 (3d Cir. 2004) (unpublished) (defendant who led police on a vehicle chase from police was not seized until after the pursuit concluded and he had been arrested).

A defendant's momentary compliance with police directions does not rise to the level of a Fourth Amendment seizure if he "did not submit in any realistic sense to the officers' show of

6

authority." *Valentine*, 232 F.3d at 359; *see also United States v. Grant*, 459 F. App'x 154, 156 (3d Cir. 2012) (unpublished) (defendant who momentarily raised his hands when police ordered him to "show your hands" for no more than a few seconds before fleeing was not seized); *United States v. Samuels*, 131 F. App'x 859, 862 (3d Cir. 2005) (unpublished) (defendant who raised one hand in response to officers' request to raise both his hands did not submit to police authority because he continued to make hand movements toward his waist). In explaining this caveat, the Third Circuit in *Valentine* cited with approval the D.C. Circuit case, *United States v. Washington*, which found that the defendant had not yet been seized when he temporarily stopped his car at the curb in response to police commands but sped away when the officer approached on foot. 12 F.3d 1128, 1132 (D.C. Cir. 1994).

The record before the court indicates that Defendant pulled over when police flashed their lights only to speed away when the officers drew near. These facts are akin to the sequence of events that occurred in *Washington* and *Sinkler*, and the Court similarly finds that there was no seizure until Defendant eventually surrendered to the police at the conclusion of the vehicle pursuit.

In addition, because Defendant threw the shotgun out of the car during the pursuit, the weapon was no longer with him at the time of the seizure. An individual has no reasonable expectation of privacy in abandoned property; therefore, he cannot mount a Fourth Amendment challenge to suppress such evidence. *Abel v. United States*, 362 U.S. 217, 241 (1960); *accord United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004) (citing *Abel*). Indeed, the Third Circuit has repeatedly held that prior to a seizure, items a defendant throws away during a police pursuit are abandoned for Fourth Amendment purposes. *See, e.g., United States v. Rivera*, 441 F. App'x 87 (3d Cir. 2011) (unpublished) (bag of cocaine defendant discarded while fleeing on foot was

7

abandoned); *United States v. Johnson*, 432 F. App'x 118 (3d Cir. 2011) (unpublished) (handgun that defendant tossed away during a foot pursuit was abandoned).

Defendant has admitted that the shotgun was thrown from the car he was driving during the pursuit. He was only seized after the pursuit ended when he pulled his car over. Accordingly, the weapon was abandoned prior to the seizure. Furthermore, the Supreme Court does not recognize that an "illegal pursuit," as Defendant puts it, implicates the Fourth Amendment. *See Hodari D.*, 499 U.S. at 624 n.1, 626-29 (cocaine tossed by the defendant during a pursuit and immediately before a seizure constituted abandoned property even though the seizure was later found to be unjustified).

In the absence of any disputed issues of material fact, Defendant has not presented a colorable constitutional claim on which to base the suppression of the shotgun.[4] *See Hines*, 628 F.3d at 105. No event triggering Fourth Amendment protections with respect to the weapon occurred. Therefore, his motion to suppress on this basis is denied.

**B. Standing as to the statements.**

Next, Defendant moves to suppress certain statements relating to his gang affiliation while being placed into a police transport vehicle immediately following the vehicle pursuit on July 31, 2010. (Docket No. 54, at 2-3). He avers that he had not been given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), before making those statements, and he asserts that

---

[4] Even if Defendant was seized when he was initially pulled over, he would not be able to make out a colorable Fourth Amendment claim for suppression of the weapon. In the context of a seizure engendered by a traffic stop, police must provide a reasonable and articulable suspicion that the suspect has broken the law. *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006). "Any technical violation of a traffic code legitimizes a stop." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)). Failure to stop at a stop sign constitutes a violation of the Pennsylvania Motor Vehicle Code. *See* 75 Pa. C.S. § 3323(b); 3733; 3736; 1543. On the other hand, "[w]here reasonable suspicion for the traffic stop is lacking, the evidentiary fruits of the traffic stop must be suppressed." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (citing *United States v. Johnson*, 592 F.3d 442, 447 (3d. Cir. 2010)).

Because Defendant does not assert that he stopped at the stop sign, as required by law, he fails to show that the officers' initial attempt to pull him over or the ensuing pursuit was illegal. Without a "poisonous tree," Defendant cannot show standing to challenge the weapon's admission into evidence.

he had not waived his constitutional rights prior to any interrogation.[5] *Id.* at 3. The Government merely points out that Defendant has not proven that he was "in custody" within the meaning of *Miranda*. (Docket No. 61, at 3-4). Significantly, the Government never explicitly disputed Defendant's contention that police did not read him his *Miranda* warnings in either the response brief or at the hearing.

The Supreme Court in *Miranda* established that a suspect must be given specific warnings of his Fifth Amendment rights prior to a "custodial interrogation." *Id.* at 444. The Court further explained "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* As the Court later elaborated, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The Government bears the burden of showing that a statement given prior to *Miranda* warnings is admissible. *United States v. Shaird*, 463 F. App'x 121, 123 (3d Cir. 2012) (unpublished) (citing *Brown v. Illinois*, 422 U.S. 590, 604 (1975)).

Defendant allegedly announced his gang affiliation following his arrest as he was in the process of being put into a police car. (Docket No. 54, at 2-3). Based on these allegations, he was plainly in custody for Fifth Amendment purposes. *See, e.g.*, *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006) (defendant who was handcuffed and detained in a police cruiser was in custody and entitled to *Miranda* warnings); *Com v. Turner*, 772 A.2d 970, 980 (placement

---

[5] Defendant also argues that these statements were made as a direct result of the illegal stop and seizure, (Docket No. 54, at 2), implying that they are fruit from a poisonous tree. As previously stated, however, the initial stop was permissible because there is no dispute that Defendant was seen violating the motor vehicle code. *See* discussion *supra* at note 4.

of suspect in a police car constitutes being in police custody). Additionally, the allegations contained within Defendant's motion to suppress indicate that there are disputed issues of material fact concerning whether Defendant revealed his gang affiliation in response to any kind of interrogation tactic used by police officers prior to being informed about his *Miranda* rights. If, as alleged, he informed police about his gang affiliation following a custodial interrogation without being given *Miranda* warnings beforehand, (Docket No. 54, at 2-3), then those statements may be excludible. On the other hand, his statements would be admissible if they were spontaneously made. *See Brown v. Phelps*, No. A-08-596-GMS, 2011 WL 6069072, at *5 (D. Del. Dec. 2, 2011) (unpublished) ("Significantly, spontaneous statements that were not made in response to interrogation or its functional equivalent are not barred by *Miranda*.") (citing *Innis*, 446 U.S. at 299-301). To the extent that these statements are inculpatory, the Government must show that they are admissible as evidence. *See Shaird*, 463 F. App'x at 123 (citation omitted). Because the parties have yet to supplement the record with additional facts about why Defendant made these statements, an additional hearing is necessary to determine whether suppression is warranted.

**C. Standing as to the search of the residence on September 9, 2010.**

Last, Defendant moves to suppress the items seized during the September 9, 2011 search of his person and of the residence at Broadway Avenue in Pitcairn. (Docket No. 54). Defendant avers that the search of the residence and seizure of items therefrom were unlawful, illegal and in violation of his constitutional rights because: (1) the officers did not have a search warrant nor probable cause to believe that Defendant was present in the residence; (2) the subsequent seizure of items, including the search of Defendant's person, was a direct result of the initial entry; (3) the illegal entry rendered any subsequent consent to search the residence invalid; and (4) the

warrantless entry was without reasonable suspicion. *Id.* at 4. The Government seemingly challenges Defendant's standing on the basis that he did not actually have any constitutionally protected interest in the residence that was searched on September 9, 2010. (Docket No. 61, at 10).

Aside from the fact that Defendant was found in the Broadway Avenue residence on the date of the search, the parties have not provided the Court with any facts pertaining to Defendant's interest in the subject residence. Nevertheless, Defendant's mere presence within that residence may provide him with a minimal expectation of privacy sufficient to trigger Fourth Amendment protections. The Third Circuit has recently reiterated the Fourth Amendment rights of defendants who are in the homes of others:

> The protections of the Fourth Amendment extend not only to people in "their" houses, but also "in some circumstances ... in the house of someone else." *Carter,* 525 U.S. at 89, 119 S.Ct. 469 (citation omitted). In *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that an overnight guest in the house of another has a legitimate expectation of privacy for as long as they are in the home. The Court reasoned that "[s]taying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society ... [and] [f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy ...." *Id.* at 98–99, 110 S.Ct. 1684. An overnight guest satisfies the two-part inquiry announced in *Ciraolo,* but fails when the overnight guest departs the home, or where "one [ ] is merely present with the consent of the householder ...." *Carter,* 525 U.S. at 90, 119 S.Ct. 469. Accordingly, "[i]t is settled law that ... [s]hort-term guests ... have no expectation of privacy in the house ...." *United States v. Mosley,* 454 F.3d 249, 259 (3d Cir.2006).

*U.S. v. Pettiway*, 429 F. App'x 132, 135 (3d Cir. Apr. 28, 2011) (unpublished); *see also U.S. v. Mitchell*, 2010 WL 3938235, at *3 (M.D. Pa. Oct. 4, 2010) (unpublished).

Defendant alleges that 310 Broadway Avenue was "his residence" while simultaneously denying that this residence was listed as his address with the Probation Department in Allegheny

County. (Docket No. 54, at 4) Moreover, Defendant presented no evidence at the hearing on August 15, 2012 to establish his residency or legitimate expectation of privacy in the residence. *See* Docket No. 77. Based on the present record, it is not clear whether he had some possessory interest in the residence, was an overnight guest, or was merely a short-term guest without a legitimate expectation of privacy in the home.

On the other hand, the Government has charged Defendant at Count 3 with maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) from August 15, 2010 to September 9, 2010. (Docket No. 37, at 4; Docket No. 38, at 1). The elements of that offense require Defendant to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purposes of manufacturing, distributing, or using any controlled substance." § 856(a)(1); *see also United States v. Providence*, 378 F. App'x 192, 194-95 & n.1 (3d Cir. 2010) (unpublished) (listing the elements of § 856(a)(1) and applying them). As such, the nature of the charge suggests that Defendant used the residence for at least a month, which appears to undermine the Government's challenge to Defendant's standing in the involved residence. Although Count 3 of the superseding indictment does not specify that 310 Broadway Avenue is the subject drug-involved premises, the Government's earlier filings suggest that said residence is the drug-involved premises referenced in the superseding indictment. Notably, the Government previously argued that:

> On September 9, 2010, members of the Allegheny County Sheriff Fugitive Unit joined with members of the Pitcarin [sic] Police Department and the Allegheny County Adult Probation Office in an attempt to arrest Stanton on the outstanding warrants. The [police] report, provided previously to the defense, indicates that Stanton was located in a house in Pitcarin-along [sic] with 2 semiautomatic pistols, ammunition, crack cocaine and drug dealing paraphernalia. The defense has been advised that the ongoing ATF investigation has revealed that Stanton was using the residence to sell crack cocaine, that Stanton possessed the firearms in

> furtherance of his drug trafficking, and that it is the intention of the
> government to charge this incident in the near future.

(Docket No. 34, at 2). From the Court's review of all the filings in this case, the "house in Pitcarin [sic]" referred to in this passage appears to be 310 Broadway Avenue, where the search and seizure of evidence occurred on September 9, 2010, and where Defendant's alleged illegal use as described in Count 3 of the superseding indictment took place. In light of these circumstances, the Court believes it is appropriate to shift the burden to the Government to justify the search and seizure of evidence at 310 Broadway Avenue on September 9, 2010.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress [54] is DENIED, in part as to the firearm. On the other hand, as to the statements made on July 31, 2010 and the search of the residence conducted on September 9, 2010, Defendant has demonstrated a colorable constitutional claim. As to same, there are unresolved issues of material fact that will affect the outcome of the Defendant's motion to suppress. Accordingly, the Court will reserve ruling on the motion to suppress the described statements and the physical evidence seized at the subject residence until after considering further evidence and argument to be presented at a suppression hearing as scheduled by the Court. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated:        October 10, 2012
cc/ecf:      All Counsel of Record